Mr. Thomas. Thank you, Your Honors. May it please the Court, my name is Peter Thomas, and I represent the City of Hailey and its Police Chief, Steve England. I would like to reserve four minutes for rebuttal, if possible. Just keep an eye on the time, if you may. Before getting into kind of the meat of my argument, I'd like to provide some context to these claims as we're discussing, you know, Martinez and Kennedy. On October 19, 2020, there was a domestic dispute call placed in Bellevue, Idaho. Bellevue is also one of the defendants in the underlying lawsuit in this case. However, it is worth noting that Steve England and the City of Hailey were not the responding law enforcement agency and couldn't be because the bad actor in this case, Jared Murphy, was a City of Hailey police officer. And conducting the criminal investigation would have been a conflict of interest. And so unlike the law enforcement officers in Martinez and Kennedy who were providing direct police services, the claims here really arise from Chief England's personnel decision, not the provision of, I guess you'd call, police protection directly. Turning to the State Created Danger Doctrine, I think it's pretty clear that the analyses under the State Created Danger Doctrine state that a failure to act is simply not enough. It has to be a, quote, affirmative act that creates or worsens the danger. There are really two cases that are on point in this case that the district court relied on, which are Martinez and Kennedy. In Martinez, the victim reported that her police officer boyfriend had had a long history of sexual and physical violence against her. There had been prior domestic violence calls. These acts were documented. And at some point, the victim made a report to police and requested that she remain anonymous. At some points, the defendants unfortunately disclosed that report directly to the boyfriend and then made disparaging comments that created the impression that he could continue to abuse her. The rule from that case says the State Created Danger Doctrine applies when an officer reveals a domestic violence complaint while simultaneously making disparaging comments about the victim in a manner that reasonably emboldens the abuser to continue abusing the victim. We believe this test is conjunctive and that the district court did not find both a disclosure of an anonymous report and also thereafter disparaging comments or comments that allowed Jared to feel that he could continue abusing Ashley, you know, with impunity. But to turn to the first part of this test, which is the request to remain anonymous, the disclosure that was made in Martinez provided the attacker the opportunity to attack because previously the abuser did not know about the investigation or who the reporting party was and could not, therefore, have created the attack. By disclosing that information, of course, the attacker now knew that he was under criminal investigation and who to attack if he so chose. In this case, the district court held not that Chief England disclosed that there was an investigation into Jared's fitness for duty or who was involved in that investigation or who had reported. Jared already knew those facts and, therefore, already had that opportunity to conduct an attack if he so chose. The district court also held that it was a, quote, affirmative act for Chief England to disclose the reasons for Jared's firing, and that's materially different from the sort of disclosure that occurred in Martinez. The disclosure that the court relied on in Kennedy, similarly, is a situation where the person under investigation was not aware that his neighbor had reported that he had molested the neighbor's daughter or that he was even under investigation at all. And so, again, to the extent the court relied on Kennedy and Martinez for the idea that there was a disclosure in this case, it has misplaced the law because there was no disclosure of Ashley's identity or the existence of an investigation. I note also in Kennedy there was evidence of an affirmative promise to protect, where once there was the one the abusing bad actor was, he found out he was under investigation. The victims in that case actually specifically requested police protection and were promised extra police protection, I believe, in the form of additional patrols around the house or something to that extent. There is evidence in that case that they requested it, they got a promise, and that promise was broken. In this case, the court did not make a finding that there was any express request for protection or that Ashley ever received any such protection of extra police protection. Yes. I'm listening to your argument. Is your argument that there's no constitutional violation, or is your argument that the law was not clearly established? Both, Your Honor. I think that it's important to keep in mind that under Descheny we're not talking about any claim against a State actor who may have failed to discover something or failed to be careful. I understand that. And so I think I would argue both, that the court misapplied the law such that the what the court found does not amount to a constitutional violation. We're not, you know, we can't look on the constitutional prong. We don't have jurisdiction to look at any factual findings or factual determinations that the district court made. We have to for we start by saying, you know, we take the facts in the light most favorable to the nonmoving party and ask whether or not a reasonable factfinder could find a constitutional violation. I guess what you're saying is that on these facts, a reasonable factfinder could not find a failure to protect. Oh, well, I think I have a couple. Is that what you're saying? No, not necessarily.  All right. Well, then you can make it clearer. Yes. So there is case law in the Ninth Circuit that says if a defendant offers facts at the appellate stage that are uncontradicted by the record, the Ninth Circuit can consider them. You know, in this case, for example. We just take all the facts that were, you know, in the record presented, and we ask we look at them in the light most favorable to the nonmoving party, and then we ask on those facts, could a reasonable factfinder, you know, find the violation that's  I understand that, Your Honor, but I specifically with requests or with regard to an apparent request on Ashley's part to remain anonymous, that doesn't appear in the record. No witness ever said that. Nobody alleged that she ever requested to remain anonymous. In fact, the first time that that concept appears is in the district court's order on the motion for summary judgment. And I would note also that even if it had appeared in briefing, argument doesn't constitute evidence. And so I don't think that's even a fact really in the record. Just to be sure I understand your answer to a couple questions back from Judge Payaz, I thought it was your position that taking all the facts in the light most favorable to the nonmoving party is a constitutional violation. Am I misunderstanding you? That's correct, Your Honor. It was a two-faceted answer, and that was the second half of the answers. I think even as the judge found the facts, there is no constitutional violation if you correctly apply Kennedy and Martinez. Well, the problem I'm having with your answer is you say as the judge found facts. And the judge isn't supposed to find facts at summary judgment. He made a determination of whether there was a sufficient dispute that it could as to create a triable issue. I suppose the response to that would be then that the Ninth Circuit should look at this and determine, well, the dispute of fact that the judge found is not a material dispute of fact to the analysis in Kennedy and Martinez. I mean, that would be my response. Okay. Moving on to the deliberate indifference prong of the analysis here, I think the district court erred in relying on a, quote, history of abuse and verbal arguments in public and excessive drinking in concluding that there was deliberate indifference. Again, in the cases that are on point, Kennedy and Martinez, the court held that ignoring a history of violence can be deliberately indifferent. But, of course, in Martinez, it was multiple prior documented physical and sexual assaults. In Kennedy, the abuser had lit a cat on fire, attacked his girlfriend with baseball bats, been in numerous fights. I turn to a case called Stanovich, I believe is how it's pronounced. And in Stanovich, an off-duty police officer returned to a house that he had previously served a warrant at and beat up the residents. Stanovich, the officer himself, had a considerable disciplinary record. He had had numerous complaints against him for excessive force and using violence during arrests and detention, and at least three of these complaints were sustained. And the Ninth Circuit held that these facts do not show as a matter of law that the county could have foreseen Stanovich's actions, which would establish the necessary causal link. And so I think in light of this, the idea here that Chief England was aware that these people had argued in public before or that Jared had been, you know, rude and violent does not establish the history of violence necessary to show that Chief England was deliberately indifferent under Martinez and Kennedy. And, in fact, you know, upon hearing that there had been a domestic dispute, Chief England went out of his way to send an additional marshal to investigate whether there ever had been violence. He took affirmative steps to find out whether there had been violence. And because this is a subjective standard, it's a purely subjective standard, the fact is the fact is I don't believe that you can find deliberate indifference here based on what the Court considered to be material questions of fact. I just don't think they're material questions. It is undisputed, unlike the other defendants, that Blaine and Bellevue conducted an investigation into this incident on October 19 and concluded the answer was no. There was no probable cause of any crime there. Ashley stated numerous times that Jared had never been violent. No person ever told Chief England that Jared had been physically violent towards anybody. There were no citizen complaints. And so if under Stanowich, that's the ultimate violence there is unforeseeable. I don't see how this is foreseeable in this case. Finally, I'd like to talk about whether a law is clearly established or not. And I'm sure you've heard, you know, that the clearly established law should not be defined at a high level of generality. I think here we have a pretty specific level of case on point, which is Martinez and Kennedy. And the standard would require that Chief England is aware that his particular conduct violates the law, and I don't understand how you can make a coherent argument that in Kennedy, disclosing the report of abuse and then emboldening the abuser to continue the abuse, from Chief England's perspective, he investigated the conduct of an employee, determined essentially that the employee was not fit for duty, made steps to determine that there had not been violence, asked him to stay apart while he was conducting the investigation, and then terminated his employee, and it's not clear how he should be unnoticed that that course of conduct violates the Constitution. And with that, I would reserve my time. Thank you. Thank you. Mr. Nicholson. If you may, please, the Court. Chad Nicholson and my colleague, Taylor Brooks, on behalf of appellees who I'll refer to as the Tacketts. I want to start some with the course comments. I think one of the fundamental issues here is that jurisdictional component. I believe the case law is clear that the factual determinations of the court, excuse me, of the trial court, are not at play at this point because we're at an interlocutory status. We're not post-trial and whatnot. Both the Supreme Court and this Court have been very, very clear that at this stage of the litigation, because we're dealing with qualified immunity, this Court's jurisdiction is limited to the unique question of law as to whether or not the constitutional right was clearly established as of October 22nd, 2020. And I think interestingly enough today, at argument, if I understood counsel correctly, there's a concession that Kennedy and Martinez are clearly on point. If that is the case, the constitutional law was clearly established years before this case. Martinez was the latter of those decisions, and that decision was rendered in 2019. So we've got over a year. So I think the real focus on this question, on this appeal, frankly, seems to be changing. And to address some of the other, you know, contentions here that have been made today, on the failure to act, if the Court is inclined to get into, to revisit these facts. Well, we, you know, we don't, we just take the facts in the light most favorable to the hackers. And you ask at the first step of the qualified immunity analysis, there's two prongs. Could a reasonable fact finder, jury, find a constitutional violation when you take the facts in the light most favorable to the non-moving party, he or the plaintiff? Right. And I certainly agree. We believe that Judge Sahari ---- We're not, we don't look at the facts. Now, he said, well, there was one fact that was in the district court's order that's not in the record. So, I mean, something like that, we would say, well, that doesn't, that doesn't factor in. But ---- Right. And I believe that's the fact of anonymity. And what I would say on that point, a couple issues. One, that argument really wasn't raised below. There really seems to be a new argument here on appeal. So I don't know that that argument is an appropriate argument in general, jurisdiction issues aside. Secondly, I'd submit to the Court that whether or not there was anonymity is, in fact, a factual issue. And in this case, the facts and the records on that point are when Chief England went to meet with Ashley Midby on the morning of Tuesday, October 20th, she requested to meet back in the alley behind the coffee shop. That's indicating that she wants to be, wants to be confidential. In her discussions with Detective Abate of the Blaine County Sheriff's Department, she indicated that she'd been fearful, she hadn't wanted to come forward before. She also indicated that she didn't want to contact the Haley Police Department because Jared Murphy was an employee of the Haley Police Department. And when you look at these facts in the summary judgment standard, I think, drawing all reasonable inferences in Ashley, in the plaintiff's, excuse me, in the Tackett's favor, there is evidence that allows the Court to reach that conclusion at this stage of the proceedings. And what is the evidence that would allow a trier of fact to conclude that there was deliberate indifference to a known risk? On the deliberate indifference, I think there's a multitude of facts. One, Steve Englund himself testified that he had hundreds of hours of domestic violence training. So he is well aware of the cycle of violence. Within the Court's record, and this wasn't expressly addressed, but it's in the record, it was before the trial court, we submitted declarations of two experts that discuss about the police practices, familiarity of police with the cycle of domestic violence, how the cycle of domestic violence escalates. So Steve Englund starts with that point. Steve Englund also made the point, and he testified to this, that he was aware that this, that these types of situations often escalate. That is his work. He said particularly when a law enforcement officer is involved, whether that be as the victim or the perpetrator. So he's aware he's escalating. So if we take that, I mean, if we take it to be established that he was aware of a risk, deliberate indifference requires not just awareness of the risk, but then not doing anything to mitigate it, doesn't it? I mean, like if you're aware of the risk and you do something to address the risk, you're not being deliberately indifferent, are you? Well, I think the issue here is, I mean, if you take that question of, you know, I would say flip it in this case. He's aware of the potential of danger. He's aware of, and I would say on a side note, there's lots of evidence here that there was a history of violence. They talk about Kennedy and the cat. In this case, Chief England was aware that on the night of October 19th, Jared Murphy was abusing a dog. He was throwing it down. Right. No, I think we've.  Back to your question. So in this case, what we have is, and I would say this, we have a certain level, and bear with me, I'll get there as quickly as I can. We have a certain level of danger on October 19th after the 911 call. There's a certain level there. We recognize that. But then what happens next is Chief England talks to Ashley Mindy. He gets more information. That afternoon, he talks to Jared Murphy. He discloses that additional information. So he's now heightened this risk. And to get back to your point in terms of the deliberate indifference, what he does at that point, after he himself has heightened the damage, he puts into place this stay-away order. And that stay-away order, as he described it, he specifically says it applies to his employee and during the investigation. That is his testimony. Then what does he do? Then he terminates the employment of Mr. Murphy two days later. The effect of that termination is it eviscerates that stay-away order. He's no longer an employee. The investigation is not contending. So it's not a matter of he ignored the risk. You see, in this case, he took affirmative steps to remove the one protection that he put in place and the one protection that Ashley Mindy was aware of. Well, but he also took affirmative steps to, you know, he took away his gun, right? He paused him to no longer be a police officer. And one could reasonably think that a dangerous person who has the, you know, authority of a police officer is more dangerous than somebody who doesn't. And he fired him, right? And the premise of much of our system is that, you know, imposing consequences on people for bad behavior makes them less likely to engage in bad behavior in the future. So all of that seems, I mean, you need to show that England was subjectively aware that he, you know, had a, that there was a risk that he was ignoring. And that seems like, you know, measures that he could well have thought were serious, you know, vigorous action to address and mitigate the risk. Why is that not the right conclusion? You know, I would disagree with that because the stated concern of Ashley Mindy had to do with what would happen if Jared Murphy lost his position as a law enforcement officer. He was aware that that was her overriding concern. She talked about a fear of retaliation, that he had said to her he would make her life hell for years. He would retaliate against her and her family. And so, you know, what we have here is he is aware of that. He's taking these conscious steps to do that. And so he's deliberate and different on those points. I mean, I guess one concern that I sort of have in the background here is that it seems like if we were to rule in your favor and a situation like this were to come up again and somebody in England's position goes to seek legal advice, I mean, wouldn't a competent lawyer say, gosh, for goodness sake, don't do anything about this and just, you know, stick the report in a drawer? Because, like, if you go and, you know, do something affirmative, then you'll have taken some affirmative action. And if, you know, something tragically results from it, you'll be liable or potentially liable on a theory that whatever you did heightened the danger. So better to just do nothing. Well, again, I would disagree with that because I don't think the advice would be don't do anything. I think the advice would be if you say you're going to do something, do something. Going back to Kennedy, Officer Shields said he was going to do two things, and he didn't do either of them. The first, he said, is I'm going to give you prior notice. He didn't do that. After he tried to rectify that, he said, we're going to do additional police patrols. He didn't do that. And that's what we have in this case, is Steve England took some steps, and he said, I'm going to take steps. We call it a stay-away order because we wanted to be clear it's not a court-issued order. But he takes steps. And the advice then in that hypothetical is if you're going to say you're going to do something, follow it through. And in this case, quite frankly, it's a very, very simple thing. Let me ask you this. Just to follow up on Judge Miller's question. Do you think a reasonable lawyer who's advising his client, the chief, that if you're going to do this, you might also want to let his girlfriend know what you're doing? Are you referring to letting Ms. Midby know? Yes. Absolutely. And I think that's part of it. And that's why I mentioned as well, when you look at how Steve England himself categorized the stay-away order, he personally put limitations on that. It's my employee. It's during the investigation. He controlled all of that. And so if you're going to make that type of gesture, which quite frankly we agree with, that should have been done, carry through on it, make a simple phone call, send a text. They talked about sending texts back and forth. That's literally all he needed to do. And I think, again, this is where I actually think in some respects this is where this case is factually similar to the Grub case. That's where the gal was hired to a penal institution and was told you're not going to work with violent offenders. Well, she ended up being put with one. She didn't know that. And this court said that's a state-created danger. That's a constitutional violation. And to that point, if you're going to hire somebody and you know they're going to work with violent inmates and you say you're not going to work with violent inmates, you simply carry through on that. And so I don't think there's this real danger that we're going to create a system where people don't engage in protective activity. I think we're going to create a better system that says engage in it and then follow through. And that's the underlying issue here is, you know, and I think, again, back to the issues here, it's also just not that he was dealing with a level of danger. Let's call it a level 7 danger. He did affirmative actions that further heightened that. The way that he heightened that is by disclosing items to Jared that didn't come up other words. He asked about the — he asked Jared if he had told Ashley that he'd had a — was supposed to have a meeting that morning and demanding his badge. Jared Murphy didn't provide that information to England. Asked about if he'd put a tracker on his car. Jared Murphy didn't provide that information. Asked about if — Well, how is he — how is he supposed to do an investigation without — I mean, how is he supposed to do the investigation without disclosing that? Well, again, I think he can do the investigation. He absolutely needs to do the investigation. But the investigation can't involve asking questions that would reveal — I mean, it seems like the fact of the investigation is going to reveal something. And so how does he — how does he get around that? Well, again, I think in this case it's a matter of, yes, you have to do the investigation. Again, take Officer Shields. Those parties had to do the investigation. And, you know, I believe it was actually in Kennedy, maybe it was a subsequent decision by this court, that talked about how the fact that Ms. Kennedy made a report that required an investigation, that doesn't vitiate this cause of action. Absolutely, they have to do those investigations. But as you do the investigations, you have to follow through on what you're telling people. And that's really the fundamental issue here is he took affirmative steps. He made a representation. I'm going to do certain things. Just as in Kennedy, just as in Grubbs. And they didn't follow through on that. And that — it doesn't impair the ability to do your investigation. Absolutely. We would agree we wanted him investigated. Quite frankly, we wanted him investigated years before. And those are issues that are still pending that are more state law claims. But absolutely, do those investigations. But if you're going to take an affirmative act, as in Kennedy, as in Grubbs, as in Martinez, then follow through on what you say. Take Martinez. There was clearly a confidential report. Well, then keep it confidential. In this case, if we do think there's enough evidence to show a crust for confidentiality, well, then, you know, he's a law enforcement officer. He needs to figure that out. Does that answer your question, or am I dodging it? Well, I understand the answer.  All right. So, Your Honor, it wasn't addressed here today, but I do, because it's in the briefing. I wanted to address very briefly the Haley status in this appeal. As we've indicated, we don't believe that the claims with Haley are inextricably intertwined. And I would just note on this issue, quite frankly, I'm not even sure if it's still at issue. The closing brief, this is docket 26.1 at 25, Haley submits, While defendants acknowledge that the district court's denial of defendant's motion for summary judgment on the Monell claims is not currently on appeal, the fact that the Monell claims are neither pled, which, by the way, Judge Zahari specifically addressed that, said they were pled, nor supported by the evidence. Again, we've submitted expert testimony is in the record, so there's evidence, leaves no other option but to conclude that any claims against the city of Haley are necessarily inextricably intertwined with the claims against Chief England. That's not the case. As we indicated in the briefing, we've set out policy violations that we believe are supported by the evidence. So we don't believe this Court has jurisdiction over Haley's claim. Unless the Court has further questions, we'll conclude. Thank you. Thank you. Rebuttal. Thank you. We've heard some discussion about an affirmative act, and clearly there must be an affirmative act in order to have a State create a danger. But it can't just be any affirmative act. The affirmative act must be the proximate cause of the injury. And so just establishing that Chief England took some affirmative act is insufficient. I note the Court essentially finds two affirmative actions as the cause in this case, which are the stay-away order and the firing of Jared Murphy. But if we look specifically about the firing of Jared Murphy, all the conduct that led to the firing of Jared Murphy is the proximate cause of, is Jared Murphy's conduct, is the proximate cause of his firing. I mean, it's somewhat analogous to saying that, you know, if a police officer saw someone weaving all over the road and then pulled them over, the police officer caused the person to get a DUI when, in fact, the actual cause of that DUI is the person's decision to drink and drive. And so to the extent that the firing ---- I thought the argument was there's a stay-away order in place, basically a semi-protective order, stay-away order. That terminated when he was fired, right? Yes. And that she had expressed a fear about what would happen if he were fired. Yes. So isn't that the question of risk in this case, or the genuine issue of material fact? Go ahead. I think the question is whether she was left in a worse position after Chief Englund's affirmative conduct. And in this case, before Chief Englund entered the stay-away order, the conduct that would lead to Jared Murphy being fired had already occurred. I mean, Jared Murphy was going to get fired. And so conceivably, he could have come in on the morning of the 19th. Jared could have come in. Chief Englund could have said, I have enough information and I'm firing you now, and then fired him. And Jared would have presumably been upset that he was fired as he was a few days later. So that's the position that Ashley was in then. And so saying, you know, you need to stay away from Ashley while I conduct a thorough investigation puts her in no different position than she would have otherwise been. And Mr. Nicholson mentioned that if you say you're going to do something, do something. And I think the record that the court relied on is that Englund said, do you want, or asked, do you want me to ask him to stay away from you? And she said yes. And then he went and asked Jared to stay away from Ashley during the course of the investigation. So I think he did do what he was going to say there. Turning back to Descheny is kind of my last point. In this case, like Descheny, it's a very sad case and it's a very unfortunate set of facts. In Descheny, the court held that Petitioners sought a duty there because the government actors knew that the child faced a danger. They knew and were aware of a danger. Specifically, by word and deed, proclaimed its intention to protect him and actually undertook steps to protect that child and failed. Descheny stands for the principle, as interpreted by the courts, that there is a state created danger doctrine. But based on the court's rejection of that request for a duty, they must have meant something other than knowing a danger, proclaiming that they're going to help, and trying to help and failing. The state created danger is something else. Like, the state must create the actual danger. And in this case, the danger arose from Jared getting fired, and the source of that danger was Jared's conduct, not Chief England's. And I think that's all I have. We would respectfully request that you reverse the district court on the issue of qualified immunity. Thank you. Thank you. Thank both counsel for their helpful arguments. The case is submitted, and that concludes our calendar for the week.
judges: THOMAS, PAEZ, MILLER